**Ethan Levi**, OSB No. 994255
Email: ethan@lmhlegal.com
Levi Merrithew Horst LLP
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Attorney for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **CAMERON DODSON**<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>**COLETTE PETERS, JEFF PREMO, MARK NOOTH, GARY KILMER, STEVEN SHELTON, M.D., JOHN VARGO, D.O., GEORGE DEGNER, M.D., JERRY BECKER, M.D., CARRIE COFFEY, GARTH GULICK, M.D., JODEAN ELLIOT-BLAKESLEE, M.D., SHIRLEY HODGE, MICHAEL PUERINI, M.D., PATRICK HENKELMAN, R.N., REED PAULSON, M.D., OLE HANSEN, M.D., LINDA ANN GRUENWALD, F.N.P.**<br>　　　　　　　　Defendants. | Case No.: 6:12-cv-00266-AA<br><br>**SECOND AMENDED COMPLAINT**<br>**Civil Rights Action (42 U.S.C. § 1983)** |

This is a Civil Rights action against defendants who must provide constitutionally adequate

medical care for inmates at the Oregon Department of Corrections ("ODOC"). The plaintiff ("Mr.

Page 1 – SECOND AMENDED COMPLAINT

Dodson") is an inmate of ODOC and suffers from chronic back, neck, shoulder, hip, and right arm and hand problems with associated pain. The defendants ignored these medical issues, refused to treat them, and refused to properly prescribe him pain medications. As a result, Mr. Dodson's life has been warped by pain that has caused him continuing difficulty with his activities of daily living. Mr. Dodson is right-handed. Defendants' actions in failing to appropriately treat him has caused the deterioration of his condition to such an extent, that his right arm and hand have draw-up into his torso, they have become almost useless, and are racked with pain.

Mr. Dodson also brings this action because defendants have denied his access to courts and have retaliated against him by further refusing to treat his medical conditions. Through the course of his incarceration at ODOC, Mr. Dodson has repeatedly asked for proper medical care, repeatedly grieved his lack of medical care, filed a Habeas Corpus action, and filed this lawsuit. The defendants denied Mr. Dodson's access to court by transferring him out-of-jurisdiction the day before his Habeas Corpus hearing, leading to the dismissal of his Habeas action. The defendants have also retaliated against Mr. Dodson for repeatedly asking for care, administratively grieving his lack of care, and for filing this action by withholding medical care from him.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to these claims occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts and practices alleged herein occurred at Oregon Department of Corrections facilities in Salem, Oregon; Ontario, Oregon; and Umatilla, Oregon.

Page 2 – SECOND AMENDED COMPLAINT

**PARTIES**

3.  Plaintiff, Cameron Dodson is an adult prisoner currently housed at the Two Rivers Correctional Institution ("TRCI").

4.  Colette Peters is the Director of ODOC.  She is sued in her official capacity.  As director, Ms. Peters is ultimately responsible for all aspects of ODOC rule-making and compliance.  She oversees the operations and policies of ODOC and each of its institutions.  She is ultimately responsible for ODOC's employees, employee policies, hiring practices, and operations practices. It is her duty to ensure that ODOC and its individual institutions comply with federal statutes, correctional case law, and ODOC's rules and procedures.

5.  Jeff Premo is the superintendent of the Oregon State Penitentiary ("OSP") and an employee of ODOC.  He is sued in his individual and official capacity.  As superintendent, Mr. Premo is ultimately responsible for all aspects of running the institution.  He is responsible for directing the daily operation of the institution in compliance with federal statutes, correctional case law, and ODOC rules and procedures.  At all times relevant, Mr. Premo was acting under color of state law.

6. Mark Nooth is the superintendent of the Snake River Correctional Institution ("SRCI") and an employee of ODOC.  He is sued in his individual and official capacity.  As superintendent, Mr. Nooth is ultimately responsible for all aspects of running the institution.  This includes directing the daily operations of the institution in compliance with federal statutes, correctional case law, and ODOC rules and procedures.  At all times relevant, Mr. Nooth was acting under color of state law.

7. Gary Kilmer was the superintendent of the Oregon State Correctional Institution ("OSCI") until June of 2011, and at all times relevant, an employee of ODOC.  He is sued in his individual and official capacity.  As superintendent, Mr. Kilmer is ultimately responsible for all

aspects of running the institution.  This includes directing the daily operations of the institution in compliance with federal statutes, correctional case law, and ODOC rules and procedures.  At all times relevant, Mr. Kilmer was acting under color of state law.

8. Steve Shelton, M.D. is the chief medical officer and either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is ultimately responsible for directing the operations of all ODOC medical facilities.  Mr. Shelton is bound by the standards and ethics of his profession as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Shelton was acting under color of state law.

9.  John Vargo. D.O. is the Chief Medical Officer at OSP and either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is ultimately responsible for directing the daily operations of the medical personnel at OSP.  He is responsible for all medical decisions at OSP.  He is bound by the standards and ethics of his profession adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Vargo was acting under the color of state law.

10.  George Degner, M.D. is a doctor at OSP and either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is responsible for medically treating inmates at the ODOC and is bound to follow the standards and ethics of his profession adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Degner was acting under color of state law.

11.  Jerry Becker, M.D. is a doctor working both at OSCI and OSP and is either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is responsible for medically treating inmates at ODOC and is bound to follow the standards and ethics of his

Page 4 – SECOND AMENDED COMPLAINT

profession adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Becker was acting under color of state law.

12.  Carrie Coffey, R.N. is the health services manager at OSP and is either an agent or employee of ODOC.  She is sued in her individual and official capacity.  She is the delegated on-site medical operations authority.  She manages and directs the delivery of health services at the OSP.  At all times relevant, Ms. Coffey was acting under color of state law.

13.  Garth Gulick, M.D. is a medical doctor working at SRCI and is either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is responsible for medically treating inmates at ODOC and is bound to follow the standards and ethics of his profession adopted by state rule as well as the rules and procedures adopted by the ODOC.  At all times relevant, Dr. Gulick was acting under the color of state law.

14.  JoDean Elliot-Blakeslee, M.D. is a medical doctor working at SRCI and is either an agent or employee of ODOC.  She is sued in her individual and official capacity.  She is responsible for medically treating inmates at ODOC.  She is bound to follow the standards and ethics of her profession adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Elliot Blakeslee was acting under color of state law.

15.  Shirley Hodge, A.D., R.N., is the nurse manager at SRCI and is either an agent or employee of ODOC.  She is sued in her individual and official capacity.  She is responsible for directing the daily and shift activities of the nurses and other medical personnel employed at ODOC.  She is responsible for following the standards of her profession adopted by state rule, as well as the rules and procedures adopted by ODOC for treating inmates.  At all times relevant, Ms. Hodge was acting under color of state law.

LEVI MERRITHEW HORST LLP

16.  Michael Puerini, M.D. is the chief medical officer at OSCI and is either an agent or employee of ODOC.  He is responsible for directing the daily operations there.  He is sued in his individual and official capacity.   Dr. Puerini is bound to follow the standards and ethics of his profession as adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Puerini was acting under color of state law.

17.  Patrick Henkelman, R.N. is a nurse at OSP and is either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is bound to follow the standards and ethics of his profession as adopted by state rule, as well as the rules and procedures adopted by the ODOC.  At all times relevant, Mr. Henkleman was acting under color of state law.

18.  Reed Paulson, M.D., is a doctor at OSP and is either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is bound to follow the standards and ethics of his profession as adopted by state rule, as well as the rules and procedures adopted by the ODOC.  At all times relevant, Dr. Paulson was acting under color of state law.

19.  Ole Hansen, M.D., is a doctor at OSP and is either an agent or employee of ODOC.  He is sued in his individual and official capacity.  He is bound to follow the standards and ethics of his profession as adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Dr. Hansen was acting under color of state law.

20.  Linda Ann Guenwald, F.P.N., is a nurse practitioner working at the Two Rivers Correctional Institution ("TRCI").  She is either an agent or employee of ODOC.  She is sued in her individual and official capacity.  She is bound to follow the standards and ethics of her profession as adopted by state rule, as well as the rules and procedures adopted by ODOC.  At all times relevant, Ms. Gruenwald was acting under color of state law.

**FACTUAL ALLEGATIONS**

21.  Mr. Dodson is a 50-year-old right-handed man who suffers from chronic physical disabilities and associated chronic, debilitating pain.  Mr. Dodson also suffers from hepatitis C which complicates his medical care because it limits the kinds of pain medications he can take without damaging his weakened liver.

22.  Mr. Dodson's medical conditions consist of chronic progressive deterioration of his spinal column, neurological structures surrounding and emanating from those structures as well as arthritis through his right hand, wrist, and arm resulting from a series of injuries occurring in the last 14 years.  His physical conditions include a complex of ailments including radiculopathy of the sacrum, lumbar, and cervical vertebrae with nerve impingement, problems with his spinal discs including bulging and herniation, stenosis, foraminal narrowing, sciatica, among other issues that are so severe that Mr. Dodson is no longer able to walk smoothly, stand straight, sleep soundly, extend his right arm and fully use his right hand.  Mr. Dodson's life is affected the most because of pain associated with these physical problems.  This pain is chronic and intractable.  It is made up of severe pains, sharp pains, dull pains, pain that is constant and pain that intermittently debilitates Mr. Dodson to such a degree that he cannot easily move, cannot sleep, and cannot enjoy any aspect of his life.

23.  While in ODOC custody Mr. Dodson's physical condition has progressively worsened.  His back, neck, and hips have progressively lost function and caused him more pain.  His back has an untreated mass discovered through imaging after Mr. Dodson had arrived in ODOC custody.  His right hand and arm have shortened and retracted into his torso becoming more painful and seriously limiting their use.

Page 7 – SECOND AMENDED COMPLAINT

24.  ODOC and its medical staff have recognized Mr. Dodson's condition.  ODOC medical staff has subjected Mr. Dodson to medical testing, imaging and consultation with specialists. ODOC has assigned Mr. Dodson a lower bunk it has given Mr. Dodson a stair restriction.  ODOC and its medical staff have also acknowledged that Mr. Dodson suffers from substantial pain.

25.  Mr. Dodson's medical issues and pain management issues have been extensively documented by private medical providers, the Multnomah County Jail, the United States Bureau of Prisons, and ODOC.

26.  Opioid pain medications in the right dosages effectively treat Mr. Dodson's pain.

27.  Other non-narcotic pain medications including ibuprofen and acetaminophen damage Mr. Dodson's weakened liver and do not effectively treat his pain.

28.  Mr. Dodson was in the custody of the Federal Bureau of Prison from approximately 1992 – 2008.  While there, Mr. Dodson was prescribed opioid pain medication that effectively treated Mr. Dodson's pain.

29.  In 2009, before Mr. Dodson's arrest that led to the prison sentence in this case, he was receiving 560 mg per day of Oxycontin and Oxycodone for his pain.  Mr. Dodson was receiving these medications while on a pain control contract with Dr. Baculi from the Salem Clinic.

30.  When Mr. Dodson was housed in the Multnomah County, Oregon jail in 2010, the jail placed him on a pain contract and treated Mr. Dodson's pain using opioid medication.  This medication was prescribed in an amount of 10 mg of Oxycodone four times a day.

31.  After Mr. Dodson was transferred to ODOC, he first spent time at the Coffee Creek Correctional Institution.  There, the medical staff prescribed him 15 mg of morphine sulphate two times a day.  This reduction in Mr. Dodson's pain medication did not effectively treat his pain and Mr. Dodson began suffering from debilitating pain

LEVI MERRITHEW HORST LLP

32.  On April 22, 2010, ODOC transferred Mr. Dodson to the Snake River Correctional Institution ("SRCI").

33.  In May, after arriving at SRCI, Mr. Dodson asked his primary care provider, Dr. Elliott-Blakeslee, to both change and increase his pain medication.  Dr. Elliot-Blakeslee told Mr. Dodson that she would review his current pain medication regime and his requested change with the Therapeutic Level of Care Committee ("TLC").  At the time, this committee consisted of Dr. Garth Gulick, Dr. Elliot-Blakeslee, Dr. Steve Shelton, Nurse Manager Shirley Hodge and other medical personnel at SRCI and ODOC.

34.  One week after Mr. Dodson's visit with Dr. Elliott-Blakeslee, she informed him that the TLC committee had reviewed his medication regime and had decided to discontinue Mr. Dodson from all opioid medications.  Dr. Elliott-Blakeslee indicated that she would schedule Mr. Dodson for an appointment for a second opinion with Dr. Gulick.

35.  On May 11, 2010 Mr. Dodson met with Dr. Gulick for a second opinion.  Dr. Gulick told Mr. Dodson that his file did not contain sufficient information to justify prescribing him narcotic pain medication.  Mr. Dodson told Dr. Gulick that more medical records had been ordered and that he had more medical records in his cell that would support the prescription of narcotic pain medications.  Dr. Gulick was uninterested in reviewing any more of Mr. Dodson's medical records and told him that because he had a history of drug use and drug convictions that he would be taken off of all narcotic pain medication.

36.  The next day, Mr. Dodson went to the morning medication line at SRCI.  There the nurse told him that Dr. Gulick had cancelled his morning medications and that he would only receive one dose of morphine at the afternoon medication line.  The nurse also told Mr. Dodson that he was being weaned (titrated) off his narcotic pain medication.

Page 9 – SECOND AMENDED COMPLAINT

37.  Thereafter, while at SRCI, Mr. Dodson no longer received regular doses of narcotic medication to treat his pain.

38.  As a result of discontinuing Mr. Dodson's narcotic pain medication, Mr. Dodson suffered extreme pain, his movement was limited, he was often restricted by his pain to a wheelchair and even though he notified the medical and command staff at SRCI many times that his pain was not being treated, the medical staff disregarded and ignored his pleas for proper medication.

39.  In May of 2010, Mr. Dodson filed a Habeas Corpus action in the Oregon State Circuit Court in Malheur County in order to remedy this lack of medical treatment.

40.  The court set the hearing on the Habeas Corpus action for September 23, 2010.

41.  The day before that hearing, on September 22, 2010, ODOC transferred Mr. Dodson to the Oregon State Correctional Institution ("OSCI") in Salem Oregon.  Mr. Dodson was therefore unable to attend his hearing.  The Habeas action was thereafter dismissed as moot.

42.  After Mr. Dodson's transfer to OSCI, the medical staff began treating his pain by prescribing him hydrocodone, an opioid medication.  This medication was underprescribed and did not offer Mr. Dodson sufficient pain relief and he suffered enough pain that he was severely limited in his ability to attend to his activities of daily living.

43.  Over the next year, Mr. Dodson sent several Kytes to Dr. Puerini, the Chief Medical Officer at OSCI asking him for a comprehensive pain management plan and to increase his dosage of narcotic pain medication.

44.  Mr. Dodson also repeatedly asked Dr. Becker and Dr. Puerini for additional medical testing, treatment, and surgery for physical damage and pain in his back, neck, right arm, and hand.

Page 10 – SECOND AMENDED COMPLAINT

45.  In October, 2011, in response to Mr. Dodson's kyte requesting comprehensive pain management, Dr. Puerini at OSCI responded that there was no further pain control on the horizon for him and that he was going to gradually wean (titrate) Mr. Dodson off the four hydrocodone pills Mr. Dodson was receiving each day and reduce this medication to three hydrocodone pills each day.

46.  Dr. Puerini and the medical staff at OSCI and ODOC thereafter reduced Mr. Dodson's narcotic pain medication dosage to three pills of hydrocodone each day.

47.  About two days after this reduction in medication, ODOC transferred Mr. Dodson to OSP where Mr. Dodson had a medical appointment with Dr. Degner.  At this appointment, Dr. Degner opened Mr. Dodson's medical file and noted that he was prescribed three hydrocodon pills each day.  Dr. Degner told Mr. Dodson that he was going to cut off Mr. Dodson's opioid pain medications because opioid pain medications sell so well on the "mainline" in prison.  Mr. Dodson protested to Dr. Degner that he never sells his medications in prison.  Mr. Dodson then explained his medical condition in detail and asked Dr. Degner for further testing, comprehensive pain management, and surgery on his back and arm as he was in intolerable pain and losing function. Dr. Degner was hostile and said he would schedule an appointment with Dr. Vargo for a second opinion.

48.  A week later, Mr. Dodson met with Dr. Vargo.  Dr. Vargo immediately dismissed Mr. Dodson's requests and took a hostile and belittling tone with Mr. Dodson.  He told Mr. Dodson that he believed he was malingering and that he wasn't in as much pain as he said he was.  Mr. Dodson reiterated that he had legitimate and serious chronic pain and needed comprehensive pain management.  Dr. Vargo refused to believe Mr. Dodson or take him seriously.

49.  Thereafter, Mr. Dodson had another appointment with Dr. Degner.  Dr. Degner asked him why he was at his office and Mr. Dodson explained that he was there because Dr. Degner

Page 11 – SECOND AMENDED COMPLAINT

scheduled the appointment.  Dr. Degner told Mr. Dodson he did not need to see him and dismissed him.

50.  Thereafter, Mr. Dodson had yet another appointment with Dr. Vargo.  Dr. Vargo asked why he was there and what he needed.  Mr. Dodson told Dr. Vargo that he assumed that Dr. Vargo had set the appointment to deal with his ongoing chronic pain.  Dr. Vargo told Mr. Dodson that "o.k. that's all," and promptly dismissed him without even examining him.

51.  Neither Dr. Vargo nor Dr. Degner has ever given Mr. Dodson a comprehensive physical evaluation.

52.  The day following Mr. Dodson's last visit with Dr. Vargo, he went to get his medication at the medication line.  The nurse there informed Mr. Dodson that his narcotic/opioid pain medication would be discontinued on December 6, 2011.

53.  Shortly after this visit, Mr. Dodson met with Dr. Becker.  Dr. Becker told Mr. Dodson that he would seek a specialist consultation for surgery.  Mr. Dodson pleaded with Dr. Becker to address his chronic pain issues.  Dr. Becker responded by getting up, opening the office door and dismissing Mr. Dodson.

54.  Mr. Dodson then filed a grievance against ODOC health services, Dr. Becker, Dr. Degner, Dr. Puerini, and Dr. Vargo.

55.  Shortly thereafter, Dr. Degner summoned Mr. Dodson to his office.  Dr. Vargo was present just outside the office door, within earshot of any conversation Mr. Dodson was having with Dr. Degner.  Dr. Degner informed Mr. Dodson that the TLC Committee (of which defendant Dr. Shelton is the head), had denied a surgical consultation and that Mr. Dodson was being taken off of all opioid pain management.  Dr. Degner told Mr. Dodson, "You can take Tylenol or Ibuprofen just like everyone else."  Mr. Dodson did not say anything and left Dr. Degner's office.

Page 12 – SECOND AMENDED COMPLAINT

56. On November 2, 2011, Mr. Dodson sent a letter to Dr. Shelton (the head of the TLC Committee) asking why he was denying all of his medical issues.  Mr. Dodson never received a response.

57. On November 7th, Mr. Dodson wrote to Superintendent Jeff Premo asserting that his medical issues and pain management issues had not been appropriately treated and requested medical assistance.

58. On November 17th, 2011, contrary to everything Mr. Dodson had heard from Dr. Vargo, Dr. Degner and the TLC Committee, Dr. Hansen saw Mr. Dodson and wrote him a prescription for Norco, an opioid pain medication in a dosage of four 10 mg doses each day.  This prescription was to expire on February 17, 2012.

59. On November 18, 2011, Carrie Coffey, the Health Services Manager wrote to Mr. Dodson in response to his letter to Superintendent Premo.  In the letter, she acknowledging that Dr. Hansen had re-prescribed Norco after he wrote his letter to Superintendent Premo and that that decision and prescription was made, "to better control your pain."

60. Even though Mr. Dodson had been given a new prescription for Norco, he still suffered chronic pain and it quickly became intolerable.  On December 23, 2011, Mr. Dodson signed up for sick-call.  Once at sick-call, a nurse began evaluating Mr. Dodson.  As the evaluation continued, Carrie Coffey, the Health Services Manager at OSP entered the room.  She told the nurse evaluating Mr. Dodson that he was being treated according to protocol and that nothing further needed to be done.  Mr. Dodson asked Ms. Coffey to please treat him for his immediate pain needs.  Ms. Coffey told Mr. Dodson to be quiet and continued to interrupt the procedure.  Eventually she told him to get out of the examination room before the nurse could complete his exam.

Page 13 – SECOND AMENDED COMPLAINT

61. On January 5th, 2012, Mr. Dodson was summoned to Dr. Degner's office for a pain management appointment. There, Dr. Degner cancelled Dr. Hansen's November 17, 2011 prescription for Norco. Dr. Degner told Mr. Dodson that he was going to once-again wean (titrate) him off of all opioid pain medications. Dr. Degner then reduced Mr. Dodson's prescription from four Norco pills a day to three Norco pills a day for two weeks, after this reduction, to two Norco pills a day for two weeks, then to one Norco pill a day for two weeks after which Mr. Dodson would no longer to be taking any Norco pills or any other opioid medication to manage his chronic pain.

62. Since Mr. Dodson's prescription ended he has suffered intense, persistent and horrible pain. His normal functioning has been impossible. Since then he has walked with the assistance of a specialized cane and even then with an abnormal gait. The pain makes it impossible for Mr. Dodson to sleep well, to exercise, to work, to attend to his activities of daily life, and to enjoy life. This pain has caused him a decline in his mental health function and has brought on feelings of hopelessness and depression.

63. On January 21, 2012, Mr. Dodson stood up in his cell to talk to a fellow inmate. He felt a stabbing, shooting pain through his leg and buttock and fell in his cell and landed hard on his back and neck against metal structures. Mr. Dodson would not have felt this pain had his pain been properly managed by the defendants. This fall caused bruising, pain, and an inability to move. After his fall, a nurse and correctional officers responded and took him to the infirmary. A nurse called the after-hours on-call doctor, Dr. Vargo. Dr. Vargo ordered that Mr. Dodson be admitted into the infirmary for observation. Mr. Dodson was never examined by any medical personnel nor taken to a hospital despite the serious nature of his fall and the potential for serious injury including a broken neck, broken back, or exacerbation of his existing condition. Medical staff accused Mr. Dodson of faking his fall and continuing to malinger in an attempt to obtain opioid medications.

Page 14 – SECOND AMENDED COMPLAINT

Mr. Dodson was not malingering.  He was in severe pain and could not move from his position flat on his back.  As a result of this fall and lack of medical treatment, Mr. Dodson suffered from testicular and perineal numbing and bladder incontinence.  Mr. Dodson asked nurse Patrick Henkelman for a urinal or cathetarization to remedy his incontinence.  Nurse Henkelman accused Mr. Dodson of malingering and refused his requests.  As a result, Mr. Dodson lay in his own urine for almost two days until another nurse gave Mr. Dodson a urinal.

64.    On Monday, January 24, 2012, Dr. Degner approached the front of Mr. Dodson's cell at which time Mr. Dodson pleaded for help with his pain and medical issues.  Dr. Degner responded, "You're suing me and want my help?!"  He then walked away without providing any assistance.

65.    On the night of January 24, 2012 - despite his recent fall and injury, despite his repeated requests for comprehensive, effective pain management, despite Dr. Hansen's prescription for Norco and Ms. Coffey's acknowledgement that Dr. Hansen's prescription for Norco was designed to better treat Mr. Dodson's pain - Mr. Dodson received his last dose of Norco.

66.    On June 4th 2012 Mr. Dodson stood up in his cell and felt a rubber-band-like snap in his groin.  At the time, Mr. Dodson felt this would heal and that rather than have to address another medical problem with defendants, he would try to wait it out and hope it got better.

67.    In July 2012, after he felt the injury worsen, he consulted with defendant Dr. Degner.  Dr. Degner ordered a consultation with Dr. Strauss to check for an inguinal hernia.  Dr. Strauss ruled-out a hernia and informed Mr. Dodson that he would schedule a consultation with Dr. Becker.

68.    In July 2012, Mr. Dodson had another appointment with Dr. Degner.  On that day there was an interruption of movement and all appointments were off-schedule so Mr. Dodson could not possibly attend his appointment.  Nurse Sabrina McCain told Mr. Dodson she would reschedule the

Page 15 – SECOND AMENDED COMPLAINT

appointment. Mr. Dodson specifically asked Nurse McCain to ensure that Dr. Degner did not treat his missed appointment as a no-show and Nurse McCain assured Mr. Dodson she would.

69. On July 29, 2012, Mr. Dodson again experienced intolerable pain in his groin and sought emergency attention at the OSP infirmary. OSP nurses Rick, Kim, Bert, and Melissa were present and aware of Mr. Dodson's medical situation. Mr. Dodson's vital signs were elevated corroborating that he was experiencing severe pain. One of the nurses called the on-call provider, Dr. Vargo and asked for pain relief and medical instruction. Dr. Vargo ordered nothing. During this incident, nurses expressed concern that Dr. Vargo did not order any medical intervention or pain management. The attending nurses documented the incident and searched for an explanation as to Dr. Vargo's decision not to treat Mr. Dodson. Nurse Kim pointed out a note in Mr. Dodson's medical record in which Dr. Degner had written that Mr. Dodson had "no-showed" to his last medical appointment. Nurses Kim and Rick suggested that Mr. Dodson ask the institution Officer-In-Charge to override Dr. Vargo's decision and transport him to Salem Hospital for medical treatment. The nurses also indicated support for the override.

70. On July 30, 2012, Mr. Dodson attended an appointment with Dr. Vargo. Before Mr. Dodson went in for his appointment, Mr. Dodson asked Nurse Amy to stay close to him because Mr. Dodson felt very uncomfortable. When Mr. Dodson went to visit with Dr. Vargo, Dr. Vargo told him that he refused Mr. Dodson's treatment because Mr. Dodson had delayed reporting his groin injury. Then, without explanation, Dr. Vargo stated very loudly – so that the officer present for the medical appointment could hear – "Stop swearing at me! Stop raising your voice and disrespecting me!" When Dr. Vargo said these things he did not realize that Nurse Amy was just around the corner in earshot. When Dr. Vargo learned that Nurse Amy was with Mr. Dodson he asked Mr. Dodson why she was there. Mr. Dodson responded that she was there because he did

not feel comfortable alone with Dr. Vargo. Dr. Vargo then began waving his arms and told the corrections officer that Mr. Dodson's appointment was over. Mr. Dodson left the appointment and it lasted no longer than five minutes.

71.   Since being discontinued from his opiate pain management regime, Mr. Dodson has sent kytes to Dr. Ole Hansen and requested that he reinitiate opiate pain medications and that he properly treat him for his terrible pain. Dr. Hansen has since refused to respond to these requests leaving Mr. Dodson in terrible pain.

72.   Dr. Reed Paulson, a medical doctor at the Oregon State Penitentiary, saw Mr. Dodson, while Mr. Dodson was serving time in the Disciplinary Segregation Unit ("DSU"). Mr. Dodson told Dr. Paulson on each visit that he was suffering from horrible pain and needed a change and increase in his pain medication – and that he specifically needed opiate pain medication. Dr. Paulson responded to Mr. Dodson by doing nothing to assist with his pain and told him that there was nothing that he could do for him.

73.   In around November of 2012, ODOC transferred Mr. Dodson from OSP to Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon. The ride from OSP to TRCI took approximately four hours. On the ride to TRCI, Mr. Dodson rode on hard seats without sufficient cushioning. This trip exacerbated his pain.

74.   Since arriving at TRCI Mr. Dodson has requested medical appointments with Nurse Practitioner, Linda Gruenwald. Although Mr. Dodson scheduled four visits with her, she has not seen him once. Mr. Dodson did receive a note in response to his request for opioid medications in which Ms. Gruenwald indicated that Mr. Dodson had too much drug abuse in his history for her to prescribe such medications for him.

Page 17 – SECOND AMENDED COMPLAINT

## FIRST CAUSE OF ACTION

### (Civil Rights 42 U.S.C. § 1983 Against All Defendants)

75.  Plaintiff re-alleges paragraphs (1-74)

76.  Defendants were deliberately indifferent to Mr. Dodson's medical needs and condition in the following ways:

<ol type="a">
<li>Defendants denied Mr. Dodson sufficient medical treatment for his back, neck, hip, right arm, and right hand commensurate with objective medical data describing his medical conditions and disability;</li>
<li>Defendants denied Mr. Dodson appropriate emergency medical care.</li>
<li>Defendants denied Mr. Dodson sufficient medication for pain relief commensurate with his level of pain.  The defendants thereby engaged in the wanton infliction of pain and subjected Mr. Dodson to dehumanizing, painful, and immobilizing conditions from April 22, 2010 and continuing until the present.</li>
</ol>

77.  Defendants' conduct toward Mr. Dodson resulted in an unnecessary infliction of severe pain, discomfort, and immobility that resulted in atypical and significant hardship and subjected him to cruel and unusual punishment under the Eighth Amendment to the United States Constitution, and denying Mr. Dodson's right to due process under the Fourteenth Amendment to the United States Constitution.

78.  As a result of defendants' violations of Mr. Dodson's Constitutional rights, he suffered physical injury, pain and emotional injury during his incarceration at ODOC at SRCI, OSCI, OSP and TRCI.  Accordingly, Mr. Dodson is entitled to injunctive relief, compensatory and punitive

Page 18 – SECOND AMENDED COMPLAINT

damages, as well as his attorney's fees and costs pursuant to 42 U.S.C. § 1988, from defendants for each violation.

## SECOND CAUSE OF ACTION

**(Denial of Access to Courts in violation of the First and Fourteenth Amendments to the United States Constitution, against Mark Nooth, Gary Kilmer, Shirley Hodge, Garth Gulick, M.D., Steve Shelton, M.D., Jodean Elliott-Blakeslee, M.D., Michael Puerini, M.D. )**

79.  Mr. Dodson re-alleges paragraphs (1-74)

80.  Defendants violated Mr. Dodson's First and Fourteenth Amendment rights in the following way:

    a.   In May of 2010, while in-custody at the Snake River Correctional Institution in Malheur County, Oregon, Mr. Dodson filed a Petition for Habeas Corpus in the Malheur County Circuit Court for the State of Oregon naming Mark Nooth, among others, as defendants.

    b.   By filing a Habeas Corpus Petition, Mr. Dodson was engaging in speech and conduct protected by the First and Fourteenth Amendments to the United States Constitution.

    c.   The Malheur County Circuit Court set a hearing for the matter on September 23, 2010.

    d.   Defendants intentionally denied Mr. Dodson access to the courts in his Habeas Corpus Claim, by transferring him from the Snake River Correctional Institution in Malheur County to the Oregon State Correctional Institution in Marion County, Oregon, the day before the hearing, on September 22, 2010.

    e.   The Malheur County Circuit Court dismissed his action as moot thereafter.

Page 19 – SECOND AMENDED COMPLAINT

81. The defendants took this action in retaliation for Mr. Dodson's filing of this Habeas

action.

82. The defendants took this action to deny Mr. Dodson access to the court, this access

could have remedied his lack of medical care by ordering ODOC and defendants to properly

medically treat Mr. Dodson's physical disabilities and pain.

83. As a result of defendant's violations of Mr. Dodson's Constitutional rights, he suffered

physical injury, pain, and emotional injury.  Accordingly Mr. Dodson is entitled to compensatory

and punitive damages from the defendants for the violation of his First and Fourteenth Amendment

rights under the United States Constitution, and his attorney's fees and costs pursuant to 42 U.S.C. §

1988.

### THIRD CAUSE OF ACTION

**(Retaliation in violation of the First and Fourteenth Amendments to the United States
Constitution against Defendant George Degner, M.D.)**

84. Mr. Dodson re-alleges paragraphs (1-74).

85. Defendant violated Mr. Dodson's First and Fourteenth Amendment rights in the

following way:

    a.  By late January 2012 Mr. Dodson made clear his intention to sue ODOC and

        some of its employees including George Degner, M.D.

    b.  By filing a lawsuit Mr. Dodson was engaged in speech and conduct protected

        under the First and Fourteenth Amendments to the United States Constitution.

    c.  Defendant George Degner, M.D., knew about Mr. Dodson's intention to sue him

        for failing to provide adequate pain management and medical care.

    d.   After defendant George Degner learned that Mr. Dodson planned to sue him,

        Mr. Dodson asked him for medical help.

LEVI MERRITHEW HORST LLP

LEVI MERRITHEW HORST LLP

e.    Defendant George Degner, M.D., retaliated against Mr. Dodson by refusing his request for treatment because Mr. Dodson planned to sue him.

86.  As a result of this retaliation, Mr. Dodson continued to suffer a lack of medical care which led to continued pain, immobility, and dehumanization.

87.  As a result of defendant's violation of Mr. Dodson's Constitutional rights he suffered physical injury, pain, and emotional injury.  Accordingly Mr. Dodson is entitled to compensatory and punitive damages as well as his attorney's fees and costs pursuant to 42 U.S.C. § 1988 from the defendant.

## INJUCTIVE ALLEGATIONS

88.  Defendants' constitutional violations are ongoing and continue to violate Mr. Dodson's constitutional rights.

89.  Mr. Dodson is entitled to injunctive relief prohibiting Defendants from: refusing to medically treat Mr. Dodson and refusing to provide Mr. Dodson with medication which effectively treat his pain and physical immobility.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

a.    A preliminary injunction and a permanent injunction preventing Defendants from continuing to violate the Constitution, and providing further equitable relief.

b.    A declaration that Defendants' policies, practices, and customs violate the Constitution.

c.      For judgment in favor of plaintiff against defendants for compensatory, and punitive damages for each Constitutional violation in an amount to be proven at trial.

d.      For costs and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1988 and 12205 and under other applicable law.

e.      For pre-judgment and post-judgment interest.

f.      For such other and further relief as may appear just, equitable, and appropriate.

**DATED** this 10th day of January, 2012

**LEVI MERRITHEW HORST LLP**

By:      /s/ Ethan Levi
         **Ethan Levi**, OSB No. 994255
         Email: ethan@lmhlegal.com

610 SW Alder Street, Suite 415
Portland, OR 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092